IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| ANTHONY RAVON RUFFIN, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | 1:08CR304-1 |
| v. | ) | 1:14CV87 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner Anthony Ravon Ruffin, a federal prisoner, has brought a motion, and a supporting memorandum, seeking to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Docket Entries 83 and 84.)[1] The Government has filed a response. (Docket Entry 89.) Petitioner, in turn, has filed a motion to file a reply brief exceeding the page limit set by local rule (Docket Entry 92), three replies (Docket Entries 94, 96-97), three notices (Docket Entries 98-100), a motion for the production of a transcript (Docket Entry 95), a motion to expedite (Docket Entry 104), and a motion to compel (Docket Entry 105). The matter is now before the Court for a ruling. *See* Rule 8, Rules Governing § 2255 Proceedings.

### Procedural Background

On November 1, 2006, Petitioner was named in an eight-count indictment in the Eastern District of North Carolina. (E.D.N.C. Case No. 4:06-cr-00074-F.) On December 5,

---

[1] Unless otherwise noted, this and all further cites to the record are to the criminal case. Pinpoint cites to Petitioner's pleadings are to the PDF page number.

2006, he was released and placed under $250,000 bond with additional conditions of release. (E.D.N.C. Case No. 4:06-cr-00074-F, Docket Entry 13.) On June 11, 2007, Petitioner pled guilty in the Eastern District of North Carolina to Count Seven, possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and to Count Eight, using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (Docket Entries 1 and 33.) Sentencing was scheduled for September 5, 2007 and Petitioner failed to appear. (Docket Entry 37.) A bench warrant for Petitioner's arrest was issued. (Docket Entry 44.) Petitioner was ultimately apprehended and sentenced to 322 months of imprisonment on April 15, 2009. (Docket Entry 43.)

During the time when Petitioner was subject to a bench warrant for arrest for absconding from the Eastern District of North Carolina, Petitioner committed crimes in the Middle District of North Carolina, discussed in greater detail below. Petitioner was indicted in this district for those crimes on August 25, 2008. (Docket Entry 1.) On October 27, 2008, Petitioner was the subject of a superseding indictment. (Docket Entry 10.) Count One charged Petitioner with bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 3147(1); Count Two charged him with armed bank robbery, in violation of 21 U.S.C. §§ 2113(a) and (d) and 3147(1); Count Three charged him with brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 3147(1); and Count Four charged him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 3147(1). (Docket Entry 10.)

2

Petitioner was convicted of all four charges after a jury trial on January 1, 2009. (Docket Entry 31.) He was sentenced on December 9, 2010 to a total of 415 months of imprisonment to be served consecutively to any undischarged term of imprisonment he was currently serving, including his 322 month sentence from the Eastern District of North Carolina. (12/9/2010 Minute Entry; Docket Entry 49.) After an unsuccessful appeal, *United States v. Ruffin*, 494 F. App'x 306 (4th Cir. 2012) *cert denied*, 133 S. Ct. 1303 (2013), Petitioner filed the instant motion (Docket Entry 83) and supporting memorandum (Docket Entry 84).

## Factual Background

The evidence presented at trial established the following. In April of 2008, Portia Bright ("Bright") drove Petitioner to a Bank of America located in Chapel Hill, North Carolina. (Docket Entry 56 at 22, 25.) According to Bright, she drove her cousin's blue Chevrolet Tahoe and parked behind the bank. (*Id.* at 23, 26.) Petitioner exited the Tahoe wearing a black T-shirt and a black, fitted New York Yankees baseball hat. (*Id.* at 26-27.) Approximately five or ten minutes later, Petitioner, who was now wearing a fake beard, returned to the Tahoe. (*Id.* at 28, 31-32.) Petitioner was carrying a gun and had a large sum of money that was wrapped in bank straps and separated into several stacks. (*Id.* at 29.)

According to witnesses located inside the bank, shortly before 4:00 p.m. on April 30, 2008, a tall man wearing a fake beard, dark clothes, sunglasses, wheat-colored Timberland boots, and a New York Yankees hat entered the Bank. (Docket Entry 55 at 5-7, 25-28, 40.) After having a brief conversation with bank employee Shenay Hargraves, the man approached the teller station occupied by Johnelle Liggons. (Docket Entry 55 at 6-7.) The man produced

3

a handgun and demanded hundreds, fifties, and twenties. (*Id.* at 45.) Liggons opened her teller drawer and handed him all of the money she had. (*Id.* at 45-46.) The money was kept in bank straps according to denomination. (*Id.* at 46.) The man took the money and walked out of the bank. (*Id.* at 47.) Hargraves followed the individual out of the bank and observed him get in the front passenger seat of a blue Chevrolet Tahoe, which then drove away. (*Id.* at 13-14.) Surveillance photographs supported the testimony of the witnesses located inside the bank. (Docket Entry 55 at 9-13, 30-33, 42-47.)

Lieutenant Milton Durham, an officer with the Chapel Hill Police Department, testified that on April 30, 2008, at 3:58 p.m., he received a dispatch of an armed robbery at the Bank of America in question. (*Id.* at 50-51.) Lt. Durham was approximately four and one-half miles away from the bank when he first received the dispatch, which included a description of the suspect's vehicle, a blue Tahoe. (*Id.* at 52.) Lt. Durham immediately headed in the direction of the bank and approximately six or seven minutes later he observed a blue Tahoe pass in front of him and make a left hand turn onto Elliott Road. (*Id.* at 52-53.) Lt. Durham followed the suspect vehicle and subsequently activated his emergency lights. (*Id.* at 58.) As he pursued the vehicle, Lt. Durham observed one of the Tahoe's two occupants, who appeared to be a black male, reaching or climbing over the seat. (*Id.* at 55.)

Roughly six minutes after the robbery, after being pursued by law enforcement, the driver, Bright, pulled the Tahoe to the side of the road. (Docket Entry 56 at 30-31.) Bright testified that no one jumped in or out of the vehicle. (*Id.* at 31.) Petitioner was arrested and officers found $26,000.00 in his pockets. In addition, officers recovered $9,000.00 and a

4

handgun inside the vehicle. (*Id.* at 13, 49-50, 69, 76.) Most of the money was still wrapped in bundles. (*Id.* at 66, 70, 76.)

## Discussion

Petitioner raises four often overlapping grounds for relief and many sub-grounds. First, Petitioner asserts that he has uncovered newly discovered evidence demonstrating prosecutorial misconduct. (Docket Entry 83, Ground One.) Second, Petitioner contends that the Government withheld evidence from him prior to trial. (*Id.*, Ground Two.) Third, he asserts ineffective assistance of counsel. (*Id.*, Ground Three.) Fourth, Petitioner contends that the Court was unauthorized to entertain Petitioner's prosecution because of deficiencies in the prosecutor's law license. (*Id.*, Ground Four.) As explained below, none of these grounds for relief have merit.[2]

## DISCUSSION

### A. Petitioner's Prosecutorial Misconduct Ground Lacks Merit.

Petitioner contends that one of the Assistant United States Attorneys who assisted in his prosecution, David P. Folmar, Jr., ("Folmar") was not properly licensed at the time he worked on Petitioner's case. (Docket Entry 84 at 1-6.) Petitioner also contends that the prosecutor "mailed a threatening letter to [him] telling [Petitioner] that he deleted very important evidence from [Petitioner's] camera-phone" which would have exonerated him. (*Id.* at 3, 5.) Neither allegation warrants any form of relief.

---

[2] Petitioner's pleadings are voluminous. The pleadings, at times, are also difficult to follow. The undersigned has attempted to respond to all of the many variations of Petitioner's grounds and sub-grounds for relief. To the extent that any have not been specifically discussed, they should still be denied for essentially the reasons set out herein.

5

First, Petitioner has already raised the issue of the prosecutor's licensure with the Fourth Circuit and his contention has been rejected. *United States v. Ruffin*, 494 F. App'x 306, 307 (4th Cir. 2012) ("Ruffin first seeks to have his convictions vacated because the license of one of the Government attorneys who prosecuted his case had been suspended. Our review of the record shows that Ruffin failed to establish a violation of his rights or prejudice warranting vacatur of his convictions."). This ground fails because Petitioner cannot raise anew issues decided on their merits by the Fourth Circuit. *See Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Moreover, even if this Court could decide this issue *de novo*, it would reach the same conclusion as the Fourth Circuit, which is consistent with the manner in which this Court has handled similar cases previously.[3] This ground for relief, and any of Petitioner's sub-grounds predicated upon this ground, fail. (Docket Entry 84 at 1-6, 13-14.)

Second, Petitioner's allegations involving a letter from the prosecutor confessing to the destruction of material evidence are also meritless. To prove prosecutorial misconduct, "a defendant bears the burden of showing (1) that the prosecutors engaged in improper conduct, and (2) that such conduct prejudiced the defendant's substantial rights so as to deny the defendant a fair trial." *United States v. Alerre*, 430 F.3d 681, 689 (4th Cir. 2005). Petitioner has demonstrated neither element here.

---

[3] *See, e.g., Wyatt v. United States*, No. 1:07CR322-1, 2014 WL 1330300, at *2 (M.D.N.C. Mar. 28, 2014) *adopted by*, 2014 WL 1330300, at *1 (M.D.N.C. Mar. 28, 2014); *Thomas v. United States*, No. 1:07CR42-2, 2014 WL 1230217, at *3-4 (M.D.N.C. Mar. 25, 2014), *appeal dismissed*, 580 F. App'x 220 (4th Cir. 2014); *Franklin v. United States*, No. 1:07CR428-2, 2011 WL 1675035, at *6 (M.D.N.C. May 3, 2011).

More specifically, in support of his allegation, Petitioner has submitted a letter stating the following:

January 15, 2009

To: Anthony Ravon Ruffin

    I received your letter dated Dec 23, 2008 where you expressed your concern with your alibi hearing and your mistaken identity. In your letter you stated that your alibi was the fact that you were in the truck videotaping the robber as he exited the Bank of America returning to the vehicle you were in with his gun, money and fake facial hair.

    Unfortunately, the footage on your phone of the said events was deleted while I reviewed the phone's content. I attempted to save the content you spoke of while I deleted all of the crude amateur pornography, but all the footage and photo of the man you spoke of in your previous letter were erased.

    The only footage the [sic] remains is the pornography that you and Ms. Bright made, and some nude photos of her. If you testify about the footage before a jury they, of course, would not believe you because I deleted the footage. You will be convicted, I will not lose to a low life womanizing criminal like you. Furthermore, there is no need for you to write me again about your trial strategy. I am your adversary. If you want to receive a sentence you are capable of serving, you will make any and all further discussion mentioning that phone footage and this letter the bane of your life. If you testify about any of the things in this letter, I will personally make your life unbearable. Mr. Defranco offered you a plea bargain, sign it.

    David P. Folmar, Jr.

    Assistant United States Attorney

(Docket Entry 89, Attach. 1.)

This letter entitles Petitioner to no relief because it is inherently spurious. The letter was written on letterhead from the Eastern District of North Carolina. (*Id.*) However, in this case, Petitioner was indicted, tried, and convicted in the Middle District of North Carolina. The letter purportedly bears Folmar's signature. Yet, the signature on the letter does not look like signatures by Folmar on other documents. (*Compare id. with* 07CR322-1, Docket Entries 1 and 12.) Folmar's "signature" is also located *under* (and not within) the signature block in which a signature is normally expected. The letter is also filled with slang and misspellings. The letter is a patent forgery and it entitles Petitioner to neither a hearing, nor any other form of relief. Petitioner's ground for relief fails. (Docket Entry 84 at 1-6.)

Moreover, all of Petitioner related permutations of this ground for relief likewise fail. One permutation of this ground is that Folmar's purported threat of retribution against Petitioner should he testify at trial prevented Petitioner from so testifying. (Docket Entry 84 at 7-8.) Another permutation of this ground is that Folmar's letter was an impermissible intrusion into Petitioner's relationship with counsel, thereby denying him effective assistance of counsel. (*Id.* at 9-10.) Nevertheless, these variations of Petitioner's ground for relief are based on a forged document and they consequently fail for this reason alone.

Beyond this, the Court will pause to point out how inherently incredible Petitioner's entire theory of this case is when considered in its full context. According to Petitioner, he did not rob Bank of America on April 30, 2008. (Docket Entry 85, Attach. 2 at 10.) Instead, while the bank was being robbed, Petitioner allegedly sat in the back seat of a truck located directly behind the bank making a video with the camera on his phone. (*Id.*; Docket Entry 94,

8

Attach. 1 at 19.) Bright was also in the vehicle. (*Id.*) While Petitioner was allegedly making a video with the camera on his phone, a man of roughly the same height and weight as Petitioner, who had just robbed Bank of America at gunpoint, purportedly ran to the vehicle and got into the front seat. (Docket Entry 94, Attach. 1 at 19.) Petitioner states he responded with laughter and not, as one might expect, a sense of alarm. (*Id.* at 20.) Petitioner further contends that the bank robber then took the money and the firearm out of his pocket and put it in the center console of the truck. (*Id.*) Less than ten minutes later, Petitioner and Bright were captured in the same vehicle by law enforcement with the firearm and the money. (Docket Entry 56 at 30-31.) The alleged third individual was not to be found. (*Id.* at 31.) Petitioner continues to maintain that $26,000 of the $35,000 recovered from the robbery belongs to him and that it should be returned.[4] (Docket Entry 83 at 64; Docket Entries 55 at 46; 56 at 82; 57 at 76.)

Roughly eight months passed. During these eight months Petitioner did not mention to counsel that he had a video on his cell phone of this extraordinary set of circumstances. He failed to do so even though, according to Petitioner, video footage existed of another man robbing the same Bank of America he now stood accused of robbing. Petitioner then purportedly decided to write a letter to one of his federal prosecutors (Folmar) on December 23, 2008 expressing his concern about this case of mistaken identity and explaining that the unfortunate misunderstanding could be clarified by reviewing the footage on his camera

---

[4] Testimony indicated that $33,000 was taken during the robbery. (Docket Entry 56 at 82.) Nine thousand of that was recovered from the Tahoe and $26,000 was recovered from Petitioner's pockets. (*Id.* at 69, 71-72, 76.) It is unclear how the additional $2,000 came into Petitioner's possession.

9

phone. (Docket Entry 85, Attach. 1 at 27.) That same day, Petitioner also allegedly wrote to counsel a similar letter mentioning the alleged exculpatory video. (*Id.* at 28.)

Folmar, in turn, allegedly wrote Petitioner back a letter filled with slang and misspellings, on the wrong letterhead, and bearing an odd signature in the wrong place. (Docket Entry 89, Attach. 1.) Folmar, according to Petitioner, threatened to make Petitioner's life "unbearable" if he told anyone about the accidental destruction of the video. (*Id.*) Petitioner apparently contends that he decided not to tell counsel about the alleged destruction of the video because of Folmar's alleged threat, despite the fact that Petitioner had so recently written counsel a letter regarding the existence of the alleged video. (Docket Entry 97 at 8.) Counsel's purported response was to ignore Petitioner's revelations in their entirety and instead proceed to trial as if nothing were amiss.[5] (Docket Entry 84 at 44-52.)

As explained earlier, Bright testified she dropped Petitioner off at Bank of America wearing dark clothing and he returned with a gun, a large sum of money, and a fake beard. A number of bank tellers offered consistent testimony about being robbed at gunpoint at the same time by a man wearing dark clothing and a fake beard. Video surveillance helped demonstrated that Petitioner robbed the Bank of America. Nevertheless, according to Petitioner's supporting memorandum, this evidence was not to be trusted for a variety of reasons. (Docket Entry 84.) Petitioner did not take the stand and explain this case of alleged mistaken identify, because he allegedly feared Folmar's retribution if he did so, even though

---

[5] Counsel filed an affidavit stating that he has no recollection of ever being informed of either a letter from Folmar or exculpatory camera-phone evidence. (Docket Entry 89 at Attach. 4.)

10

Petitioner faced a very long prison sentence if he were convicted.[6] As noted, Petitioner was indeed convicted and then sentenced to more than thirty years of imprisonment to be served after the completion of his twenty-six year sentence in the Eastern District of North Carolina.

During appellate briefing in this case, Petitioner raised some, but apparently not all, of Folmar's alleged misconduct with appellate counsel. Specifically, Petitioner raised the question of Folmar's deficient licensure with appellate counsel such that appellate counsel could address the issue in the appellate briefing. (Case No. 11-4152, Docket Entries 68, 84.) Nevertheless, Petitioner apparently remained silent regarding both Folmar's alleged destruction of the exculpatory video as well as Folmar's alleged threat of retribution against Petitioner should he reveal Folmar's actions. (*Id.*) As a result, appellate counsel raised the issue of Folmar's licensure with the Fourth Circuit, but did not raise the issue of Folmar's additional alleged misconduct. (*Id.*)

Petitioner raised the issue of the alleged camera-phone video and the purported Folmar letter for the first time with this Court when he filed the instant motion in March of 2014, despite being aware of the former since April of 2008 and despite being in possession of the latter since January of 2009.[7] The only explanation Petitioner offers for his silence is a fear of retribution from Folmar that he previously felt restrained by, but which he has now has

---

[6] At trial, Petitioner told the Court outside of the presence of the jury that counsel had "encouraged" him to testify. (Docket Entry 56 at 95.) Nevertheless, despite this, Petitioner chose not to testify at trial.

[7] Petitioner also filed a pleading in late 2013—which makes no mention of the purported Folmar letter—which the Court construed as a § 2255 motion, but which the Court ultimately struck from the record because it was not on the appropriate forms. (Docket Entries 79 and 82.)

11

apparently surmounted. Nor does Petitioner explain what prevented him from mentioning to anyone the video that purportedly exonerated him between the date of the robbery and the point at which—at least according to Petitioner's own narrative—he mentioned the video to Folmar and defense counsel on December 23, 2008.

Petitioner's narrative of events simply does not warrant relief. Not only is the letter Petitioner attributes to Folmar an obvious forgery, but Petitioner's larger narrative makes little sense, is inherently incredible, and borders on the incoherent. Petitioner is entitled to no relief as to this ground for relief, or to any other ground materially reliant on this ground for relief.

### B. Petitioner's *Brady* Claim Lacks Merit.

Petitioner's next (and overlapping) ground is that Folmar violated the dictates of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) by allegedly destroying the purported recording exonerating him, and further violated *Brady* by withholding the phone itself from Petitioner prior to trial. (Docket Entry 83, Ground Two, Docket Entry 84 at 11-12, 16-27.) Like all of Petitioner's grounds for relief, this one also lacks merit.

In *Brady*, and its progeny, the failure by the prosecution to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (citation omitted); *see also Giglio v. United States*, 405 U.S. 150, 154–55 (1972). As such, a *Brady* violation occurs if evidence is (1) favorable to the accused (either exculpatory or impeaching), (2) suppressed by the prosecution (willfully or

12

inadvertently), and (3) material (prejudicial). *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *see also Monroe v. Angelone*, 323 F.3d 286, 299–300 (4th Cir.2003) (citation omitted).

This ground for relief fails for the same reason that Petitioner's first ground for relief failed: it is predicated upon fraudulently manufactured evidence. According to Petitioner's own narration of events, he became aware of Folmar's alleged destruction of a video exonerating him through a letter from Folmar. As explained, this letter is a forgery and the larger narrative Petitioner has constructed around this letter is inherently spurious. As a result, any ground for relief based upon the letter, the contents contained therein, or Petitioner's larger narrative surrounding this letter, cannot be used to demonstrate that the Government withheld or destroyed evidence. Consequently, Petitioner's *Brady* claim fails in all of its permutations as it relates to the fraudulent letter and the allegations contained therein, including the allegation of a video that exonerated him. (Docket Entry 84 at 11-12, 16-27.)

Nevertheless, Petitioner also contends that the Government withheld additional evidence unrelated to the purported Folmar letter. This line of argumentation is at least arguably distinct from the purported Folmar letter and the larger narrative Petitioner weaves around the letter. Consequently, the Court will consider this line of argumentation further, but only in an abundance of caution. Specifically, Petitioner contends that the Government withheld a recorded interview (or a transcript of a recorded interview) between law enforcement and Bright, the individual who drove the vehicle in which Petitioner was apprehended, and James Bright, her father. (Docket Entry 84 at 28-31.) Petitioner likewise

13

contends that the Government improperly withheld a "Lance Armstrong" bracelet and a blue or black Yankees baseball cap. (*Id.* at 32-33.) These contentions also lack merit.

First, Petitioner concedes that notes recounting the recorded interview of the Brights were turned over to him and he also concedes that he was provided with a photograph of a Yankees baseball cap. (*Id.* at 29.) Second, the record reveals that counsel filed a request for discovery (Docket Entries 19 and 21) and that the Government responded by making available, pursuant to its open file policy, the information contained in Petitioner's criminal file (Docket Entry 22). Third, Petitioner merely speculates that a transcript or video recording of the Bright interviews, the Lance Armstrong Bracelet, or the Yankees cap would have somehow been favorable to his case. Fourth, Petitioner has failed to demonstrate any prejudice, even assuming the Government did withhold this evidence, because his assertions of prejudice are vague, unsupported, and conclusory and the remaining evidence against him at trial was overwhelming. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999).

Finally, Petitioner also contends that the Government withheld from him evidence that state law enforcement used a "suggestive and illegal" method to identify him as the individual who robbed the bank in question. (Docket Entry 84 at 34-39.)

Although not entirely clear, Petitioner appears to be contending that this "suggestive and illegal" method involved an investigator with the Chapel Hill Police Department who allegedly failed to separate three witnesses—including bank tellers who later testified at trial that Petitioner was the robber—from one another prior to their identification of Petitioner.

14

(*Id.* at 34-39.) Petitioner contends that this violated state statute as well as *Brady*. (*Id.* at 36 citing N.C.G.S. 15A-284.50.)

Nevertheless, Petitioner has failed to provide anything more than a vague and conclusory allegation that law enforcement improperly influenced witness identification. He has also failed to demonstrate that the Government withheld any such evidence, that the evidence would somehow be favorable, or that, even assuming this allegation is true, he was somehow prejudiced as a result, given the additional overwhelming evidence of guilt above and beyond that of the witness identification in question. *Nickerson*, 971 F.2d at 1136. Less than ten minutes after the robbery, Petitioner was apprehended in the vehicle observed leaving the bank. He had in his possession money from the bank, most of which was still in bank wrappers, a handgun, and a Yankees hat that surveillance photos showed the robber to be wearing. Petitioner's physical appearance was consistent with the surveillance photos and the vehicle's driver, Bright, essentially testified that Petitioner robbed the bank. For all these reasons, Petitioner's *Brady* claim fails.[8]

### C. Petitioner's Ineffective Assistance of Counsel Claims Lack Merit.

Next, Petitioner alleges ineffective assistance of counsel. (Docket Entry 83, Ground Three; Docket Entry 84 at 41-56.) This allegation, in all its permutations, also lacks merit.

To prove ineffective assistance of counsel generally, a petitioner must establish: (1) that his attorney's performance fell below a reasonable standard for defense attorneys, and (2) that

---

[8] Efforts to recast any of these arguments as ineffective assistance of counsel grounds for relief also fail. Given that these grounds have no merit, counsel could not have been ineffective for failing to pursue them. Likewise, any claims of cumulative error likewise fail, because, as explained at length herein, none of Petitioner's grounds or sub-grounds for relief have merit.

15

he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). With respect to the first prong, the petitioner bears the burden of affirmatively showing that his counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 688-89; *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). With respect to the second prong, the petitioner must show that prejudice resulted from the deficient performance, that is, that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Spencer*, 18 F.3d at 233 (citing *Strickland*, 466 U.S. at 694).

Here, Petitioner contends that trial counsel was ineffective (1) for failing to consult with him pretrial regarding "important issues," (2) for not objecting to the Government's introduction into evidence at trial of a "black/dark blue Yankees baseball cap," a "yellow bracelet," and of Petitioner's camera phone, (3) for failing to investigate the backgrounds of the prosecutors and the presiding judge, (4) for failing to file a notice of intent to offer alibi evidence, (5) for failing to investigate an "alternative suspect to the crime," and (6) for failing to introduce the exonerating video discussed previously. (*Id.* at 42-56.) None of these allegations entitle Petitioner to any form of relief.

First, a number of these sub-grounds for relief fail because they are predicated upon the forged letter, and its contents, addressed above. Simply put, Petitioner's counsel was not

16

objectively unreasonable for failing to uncover evidence of prosecutorial misconduct because there was no legitimate evidence of prosecutorial evidence to uncover.

Second, Petitioner's remaining contentions that counsel was ineffective for failing to object to the introduction of evidence at trial all fail for being vague, conclusory, and unsupported. Petitioner fails to adduce any meaningful argumentation—and the Court is aware of none—as to why a court would sustain an objection to the introduction of the evidence in question. *Nickerson*, 971 F.2d at 1136.

Third, Petitioner has likewise failed to demonstrate prejudice, even assuming counsel acted in an objectively unreasonable manner. As alluded to earlier, the evidence of Petitioner's guilt was overwhelming. Even if counsel's conduct was objectively unreasonable (which has not been demonstrated) the end result would not have changed. Petitioner would have been convicted.

### D. The Trial Court Had Jurisdiction Over This Proceeding.

Last, Petitioner contends the "Court lacked jurisdiction to hear or dispose of the litigation provided by David P. Folmar, Jr." (Docket Entry 84 at 58.) Petitioner contends that because Folmar's license to practice law was suspended when Petitioner was prosecuted, the Court therefore lacked jurisdiction to hear this case. As explained earlier, however, Petitioner has already raised the issue of Folmar's licensure with the Fourth Circuit and it cannot be relitigated here. *Ruffin*, 494 F. App'x at 307; *Boeckenhaupt*, 537 F.2d at 1183. And, again, even if the Court could entertain this question, it would reject the issue on the merits for reasons it has previously given in other similarly situated cases. *See, e.g., Wyatt*, 2014 WL 1330300, at *2;

17

*Thomas*, 2014 WL 1230217, at *3; *Franklin*, 2011 WL 1675035, at *6. For all these reasons, this ground for relief affords Petitioner no relief.

### E. Motion for the Production of Transcript

Petitioner has also filed a motion seeking an order from the Court ordering the United States Department of Justice, Office of Professional Responsibility, to release a transcript of a deposition it purportedly took from Folmar. (Docket Entry 95.) In support, Petitioner makes a conclusory assertion that the contents of this deposition would help him develop his claims. (*Id.*) Petitioner's motion is predicated upon sheer speculation and he has failed to set forth good cause that would warrant the order he seeks. *Nickerson*, 971 F.2d at 1136. The request will be denied.

### F. Motion to Expedite

Petitioner's next motion requests that the Court expedite this proceeding. (Docket Entry 104.) The issuance of the instant recommendation renders this motion moot and it will therefore be denied.

### G. Motion to Compel

Finally, Petitioner has filed a motion to compel, citing Rule 65 of the Federal Rules of Civil Procedure, in which he seeks a preliminary injunction. (Docket Entry 105 *citing* F.R.C.P. 65.) In his motion, Petitioner notes he was recently transferred from one federal prison to a second federal prison. (*Id.*) Petitioner asserts that in anticipation of this transfer, he turned over his "legal archive, and personal property" to prison staff, but these items have not been

18

returned to him. (*Id.* at 1.) Petitioner asserts further that he needs this material so he "can be prepared to continue litigating [his] case in this Court." (*Id.* at 4.)

In light of this, Petitioner seeks the entry of an injunction ordering prison staff to return his property. (*Id.*) In support, Petitioner offers an affidavit along the same lines as described above, as well as a letter from the Federal Bureau of Prisons indicating that prison officials have attempted to locate Petitioner's legal materials and personal property, but have been unsuccessful. (*Id.* at 2-3.) The letter is from Petitioner's unit manager at the Bureau of Prisons and is addressed "To Whom It May Concern." (*Id.* at 3.) The letter states that "[t]o this date, the Unit Team has been unsuccessful in getting inmate Ruffin his property. Therefore, we are requesting he be granted the opportunity to proceed with his appeal." (*Id.* at 3.)

This motion should be denied for a number of reasons. Frist, in determining whether to grant injunctive relief, the Court must consider (1) the likelihood of irreparable harm if the injunction is denied, (2) the likelihood of harm to the defendant if the request is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest. *Direx Israel, Ltd v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

Here, Petitioner has failed to demonstrate that he will suffer irreparable harm absent the issuance of a preliminary injunction or that he is likely to succeed on the merits. The only harm Petitioner alleges is that he will be unable to litigate this case further. However, as explained above, Petitioner's grounds for relief are without merit and based almost entirely on a forged document. There is no need to litigate this case further given the significant deficiencies in Petitioner's grounds for relief. Additionally, the document Petitioner has

19

attached to his motion indicates that Petitioner's personal property has apparently been lost. Consequently, there is no reason to believe that an order from this Court along the lines Petitioner seeks would provide Petitioners any relief. Last, it appears that this is more likely an issue that should be raised, if at all, in a civil rights complaint after the exhaustion of administrative remedies. Petitioner is not entitled to equitable relief. The motion should be denied.

## Conclusion

Petitioner is not entitled to any form of relief. Neither an evidentiary hearing, nor discovery, nor the appointment of counsel is warranted in this matter.

**IT IS THEREFORE ORDERED** that Petitioner's motion for the production of transcript (Docket Entry 95) is denied that that Petitioner's motion to expedite (Docket Entry 104) is denied as moot.

**IT IS THEREFORE FURTHER ORDERED** that Petitioner's motion to file a reply brief exceeding the page limit set by local rule (Docket Entry 92) is granted. The Court has reviewed all of Petitioner's pleadings and exhibits of record.

**IT IS THEREFORE RECOMMENDED** that Petitioner's motion to vacate, set aside or correct sentence (Docket Entry 83) be denied and that this action be dismissed.

**IT IS FURTHER RECOMMENDED** that Petitioner's motion to compel (Docket Entry 105) be denied.

/s/ Joe L. Webster
Joe L. Webster
U.S. Magistrate Judge

September 19, 2016

20

Case 1:08-cr-00304-JAB   Document 108   Filed 09/19/16   Page 20 of 20