# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08-CR-304-1 |
| | ) | |
| ANTHONY RAVON RUFFIN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Before the Court are Defendant's Motion for Relief from Judgment Pursuant to Rule 60(B)(2), (ECF No. 173), and Compassionate Release Motion to Reduce Sentence. (ECF No. 179.) Defendant has also filed a Motion to Seal asking the Court to seal his compassionate release motion. (ECF No. 180.) The Government filed a Response opposing the motion for compassionate release. (ECF No. 187.) Defendant subsequently filed a Reply, (ECF No. 188) and three supplements to the compassionate release motion. (ECF Nos. 189, 190, 191.) Thereafter, Defendant filed a motion entitled "Motion to Amend Compassionate Release, Request for Extension to Obtain Medical Records, Motion to Deter Summary Dismissal, Motion for Appointment of Counsel and Prayer for Judicial Equity." (ECF No. 192), and a Motion to Amend his Compassionate Release Motion to Reduce Sentence and additional medical documents. (ECF Nos. 193, 194.) For the reasons discussed below, Defendant's

1

Motion to Amend, (ECF No. 193), will be granted in part and denied in part. All other motions addressed in this Order will be denied. (ECF Nos. 173, 179, 180, 192.)

I. BACKGROUND

After a jury trial, Defendant was convicted of bank robbery and armed bank robbery while on release in violation of 18 U.S.C. § 2113(a) and (d); brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1); 924(a)(2); 3147(1). [1] (ECF No. 31, 49.) On January 20, 2011, Defendant was sentenced to 415 months of imprisonment. (ECF No. 49 at 2-3.) Defendant's is 49 years old, and his expected release date is August 23, 2054.[2]

Defendant previously filed a Motion to Reduce Sentence re Compassionate Release, (ECF No. 142), and a Second Motion for Compassionate Release. (ECF No. 148.) His Motion to Reduce Sentence re Compassionate Release asserted that he should be granted compassionate release because an Assistant United States Attorney who prosecuted Defendant's case suffered from mental illness and because of the alleged corruption of a Greenville police detective. (*See, e.g.*, ECF No. 142 at 1-2.) The Court also considered whether Defendant was entitled to a reduction in sentence because of the increased risk he faced from Covid-19 due to his health conditions. (*See* ECF No. 151 at 2-4.) The Court found Defendant was unable to establish an extraordinary and compelling reason for a reduction and that a

---

[1] Defendant committed these crimes while on release awaiting sentencing on a federal conviction in another district.

[2] Fed. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited on Jul. 2, 2025).

2

consideration of the factors under § 3553(a) precluded a modification of his sentence. (*Id.* at 5.) The Fourth Circuit affirmed the Court's ruling. *United States v. Ruffin*, No. 22-7100, 2023 WL 3645519 (4th Cir. May 25, 2023). Defendant thereafter filed numerous additional motions and supplements seeking reconsideration of the Court's ruling. (*See* ECF Nos. 152, 155, 158, 159.) The Court denied the motions and further directed that "Defendant is hereby placed on notice that further filings related to this terminated action may be deemed frivolous and subject to sanctions." (ECF No. 160 at 1.)

## II. ARGUMENTS OF THE PARTIES

### A. Defendant's Arguments

Defendant's Motion for Relief from Judgment Pursuant to Rule 60(B)(2), (ECF No. 173), asks the Court to vacate its August 2, 2022, Order, and direct Defendant to participate in certain Bureau of Prison ("BOP") programming before granting him compassionate release. (*Id.* at 1.) Defendant states that there is newly discovered evidence that impacts the Court's prior ruling. He indicates he contracted Covid-19 after the Court entered its Order and "had a severe reaction to Covid-19 that can be deemed extraordinary and compelling." (ECF No. 173 at 2.) Defendant notes he was infected despite being vaccinated and asserts that he has a particularized risk in prison because of the community setting and closely shared spaces. (*Id.*) Defendant acknowledges that he does "not have the most excellent prison record," but asks the Court not to deny him relief based on a consideration of the § 3553(a) factors. (*Id.* at 3.) Defendant has submitted a proposed release plan which describes his plan to live with his mother and his strategies to support himself and find employment upon release. (*Id.* at 4.)

3

In his Compassionate Release Motion to Reduce Sentence, Defendant asserts he can show an extraordinary and compelling reason for a reduction because he was the victim of abuse and "survived 'serious bodily injury.'" (ECF No. 179 at 1.) He indicates that in 2009 he was "the victim of serious bodily injury by half a dozen inmates at the Alamance County Detention Center in North Carolina." [3] (*Id.* at 2.) He says he suffered facial injuries and damage to his retina and required hospitalization. (*Id.* at 3.) Defendant indicates that subsequently in 2013 he was attacked by his cellmate at U.S. Penitentiary McCreary and again suffered serious injuries requiring hospitalization in the intensive care unit. (*Id.* at 5.)

In a supplement to his Compassionate Release Motion to Reduce Sentence, Defendant argues for compassionate release because the attorney who prosecuted him had an inactive bar license. Defendant says he is "a victim of [Attorney] David P. Folmar, Jr. where he violated federal and state laws to prosecute [Defendant]. (ECF No. 190 at 2.) In another supplement, (ECF No. 191), Defendant reiterates his claim that he should be granted compassionate release because Attorney Folmar prosecuted his case in violation of the law and argues that exculpatory evidence was withheld by the prosecution. (*Id.*)

On July 11, 2025, Defendant filed a motion entitled "Motion to Amend Compassionate Release Motion Request for Extension to Obtain Medical Records; Motion to Deter Summary Dismissal; Motion for Appointment of Counsel; and Prayer for Judicial Equity." (ECF No. 192.) In that filing, Defendant asks the Court to allow him to amend his motion for compassionate release to incorporate additional facts about the physical assaults he suffered

---

[3] Defendant says that the inmate stomped on his face with steel-toe boots which broke bones in his face, caused him to lose a tooth, and caused "gashes and lacerations" on his face. (ECF No. 179 at 5.)

4

and have additional time to obtain and file medical records documenting his injuries after the attacks. (*Id.* at 1.) He also asks for the appointment of counsel "for the sole purpose of obtaining and submitting the relevant medial documentation required to fully adjudicate his compassionate release request." (*Id.* at 1-2.)

Lastly, on July 28, 2025, Defendant filed a Motion to Amend motion for compassionate release. (ECF No. 193.) In that motion, Defendant asks to be allowed to file his medical records from UNC Chapel Hill Hospital. (ECF No. 193 at 1.) Defendant contemporaneously filed the UNC medical records. (ECF No. 194.) He explains that the records document the extent of his injuries following the 2009 attack at Alamance County Detention Center. (ECF No. 193 at 1-2.) He also asks for the appointment of counsel to obtain additional medical records. (*Id.* at 2.)

### B. The Government's Arguments

The Government opposes Defendant's Compassionate Release Motion to Reduce Sentence. (ECF No. 187.) The Government argues that Defendant has failed to establish he suffered abuse "committed by, or at the direction of, an individual defined in the Guidelines." (*Id.* at 1.) The Government contends that Defendant cannot establish an extraordinary and compelling reason to support a reduction in sentence. (*Id.* at 2, 5.)

### III. Motion for Relief from Judgment

First, the Court considers Defendant's "Motion for Relief from Judgment Pursuant to Rule 60(b)(2) Newly Discovered Evidence." (ECF No. 173 at 2.) In the motion, Defendant asks the Court to vacate its August 2, 2022, Order and reconsider his arguments that he is entitled to a reduction in sentence because he has medical conditions which make him

5

particularly susceptible to serious illness from Covid-19. (*Id.*) He states that he has new evidence to support the argument. (*Id.*)

Rule 60(b)(2) under which Defendant brings his motion is a Federal Rule of Civil procedure. The Federal Rules of Civil Procedure do not apply to motions for compassionate release "because § 3582 motions - which seek only to alter terms of imprisonment - are criminal in nature." *United States v. Goodwyn*, 596 F.3d 233, 235, n.* (4th Cir. 2010). The Fourth Circuit has indicated that the courts should instead treat such motions "as a new motion for compassionate release." *United States v. Hedspeth*, No. 22-6943, 2023 WL 7124547, at *1 (4th Cir. Oct. 30, 2023). Consequently, the Court will consider Defendant's arguments made in the Motion for Relief from Judgement as new claims for compassionate release pursuant to § 3582 and consider them along with the claims raised in his Compassionate Release Motion to Reduce Sentence.

## IV. Reduction in Sentence under § 3582

A sentence imposed under the law is intended to be final. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010). However, a sentence may be modified when a specific provision of law or statute provides a basis for relief. *Id.*; *see also* 18 U.S.C. § 3582(b). To receive a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), a defendant must show: (1) an extraordinary and compelling reason exists to support a reduction; (2) a consideration of the relevant 18 U.S.C. § 3553(a) factors weigh in favor of sentence reduction; and (3) the reduction is consistent with the applicable policy statements issued by the Sentencing Commission. *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024); *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). While a court has broad discretion to consider what constitutes an

extraordinary and compelling reason under § 3582(c)(1)(A), a court is not wholly unrestricted. *See Davis*, 99 F.4th at 657. Section 3582 is not an opportunity for resentencing, but an opportunity to modify a sentence in circumstances as guided by the Sentencing Commission. *Dillon v. United States*, 560 U.S. 817, 825 (2010).

Section 3582 requires a defendant to exhaust administrative remedies before seeking relief in court. *See* 18 U.S.C. § 3582(c)(1)(A). Defendant has submitted documents showing that he has filed for administrative relief. (ECF No. 173 at 11-14.) The Government does not contest that Defendant has exhausted his administrative remedies. (ECF No. 187 at 3 n.1.) Therefore, the Court will proceed to the merits of Defendant's motion. *See United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021).

A. **Extraordinary and Compelling Reason**

1. Risk from Covid-19

Defendant argues that he should be granted compassionate release because he is at significant risk of serious illness from Covid-19 due to his health conditions. (ECF No. 173.) Defendant argues that after the Court entered its August 2, 2022, Order he "had a severe reaction to Covid-19 that can be deemed extraordinary and compelling." (*Id.* at 2.) He argues that since that time he has "twitches and tightness in [his] chest that requires [him] to pant 10-15 breaths in order to catch [his] breath." (*Id.*) He contends that the Bureau of Prisons cannot protect him because he was vaccinated and still contracted Covid-19. (*Id.*) Defendant asserts that he has a particularized risk while in prison because of the community setting and closely shared spaces. (*Id.* at 2.)

The policy guidelines provide that a defendant's medical circumstances may establish an extraordinary and compelling circumstance when:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D). Accordingly, a risk from Covid-19 may be considered an extraordinary and compelling circumstance, however a defendant must show both "the risk of contracting Covid-19 is higher in prison than outside of it, and that his preexisting conditions increase the risk of experiencing a serious or fatal case of the virus." *Davis*, 99 F.4th at 655 (citing *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023)).

Defendant contends he suffers from conditions including "[c]irrhosis of the liver, hepatic encephalopathy, tachycardia arrhythmia, deep vein thrombosis which all effect my blood chemistry in varying ways especially during contraction of Covid-19." (ECF No. 173 at 2.) Defendant asserts that he contracted Covid-19 on February 28, 2023, and during the length of his ten-day quarantine he was "feeling excessively tired and weak and having shortness of breath." (ECF No. 173 at 2.) He states that he had a seizure after his release from quarantine that required a hospital visit because he was unconscious. (*Id.*) He contends that he continues to have symptoms including "twitches and tightness in [his] chest." (*Id.*)

8

Defendant undoubtedly suffers from health issues including liver and heart conditions which may increase his risk of serious illness from Covid.[4] (*See*, *generally*, ECF No. 158.) And the medical records confirm that Defendant tested positive for Covid-19 in February of 2023. (ECF No. 174 at 2.) However, in contrast to Defendant's description of his illness, the medical records indicate that Defendant appeared stable and his "lungs sounded clear bilaterally" and no supplemental oxygen was required. (*Id.*) The treatment plan directed daily screenings "for temperature and symptoms of illness and decompensation, including asking about shortness of breath and cough." (*Id.*) There is no indication in the records that Defendant suffered any complications from his Covid-19 infection, and contrary to Defendant's allegations, there is no indication that he suffered a seizure or any long-term effects due to Covid-19.

The documents before the Court do show that on March 10, 2023, Defendant was "found on the floor of his cell breathing but unresponsive." (*Id.* at 5.) However, the records also note that "[t]here was a strong odor of burning in the cell and a tightly rolled piece of paper that appeared burned. No signs of immediate distress noted . . . . [Defendant] appeared to be under the influence of an unknown substance." (*Id.*) The medical exam after the incident concluded that "[b]reath sounds clear, no signs of respiratory distress." (*Id.* at 6.) While the record is not conclusive about why Defendant was unconscious, there is no suggestion in the medical records that it was related to, or a complication from, his Covid-19 infection. (*Id.* at 5-6.) In fact, the provisional diagnosis was that the incident was the result of the "toxic effect of unknown substance." (*Id.* at 6.) Consequently, contrary to Defendant's assertions, the

---

[4] *See* CDC, *People With Certain Medical Conditions and Covid-19 Risk Factors*, https://www.cdc.gov/covid/risk-factors/index.html .

medical record indicate that he recovered from Covid-19 without any complications or long-term effects noted.

In addition, Defendant has failed to show he is at a correctional facility "affected or at imminent risk of being affected" by a Covid-19 outbreak or public health emergency. U.S.S.G. § 1B1.13(b)(1)(D). The general Covid-19 Public Health Emergency Declaration ended on May 11, 2023.[5] Defendant is currently housed at Tucson Penitentiary which is part of the Tucson Federal Correctional Center.[6] Tucson FCC only has two open cases of Covid.[7] Accordingly, the Court finds Defendant has failed to demonstrate an extraordinary and compelling reason for a reduction of sentence due to any increased risk from Covid-19.

2. <u>Attorney Folmar</u>

Defendant argues that he can demonstrate an extraordinary and compelling reason for a reduction in sentence because his case was prosecuted by Attorney Folmar, Jr., who did not have an active bar license. (ECF Nos 190, 191.) Defendant raised arguments that he should be granted compassionate release because of Attorney Folmar's participation in his case in his prior Motion to Reduce Sentence re Compassionate Release, (ECF No. 142), and related filings. As the Court noted in denying the arguments:

> However, Defendant raised this argument in a Motion to Vacate and before the Fourth Circuit on direct appeal, and on each occasion, the argument has failed. *United States v. Ruffin*, 494 F. App'x 306, 307–08 (4th Cir. 2012) (per curiam);

---

[5] CDC, *End of the Federal Covid-19 Public Health Emergency (PHE) Declaration*, https://archive.cdc.gov/www_cdc_gov/coronavirus/2019-ncov/your-health/end-of-phe.html (last updated Sep. 12, 2023).

[6] Fed. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited on Aug. 18, 2025).

[7] https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Jul. 28, 2025.)

10

> *Ruffin v. United States*, No. 1:08CR304-1, 2016 WL 8999241 (M.D.N.C. Sept. 19, 2016). As this argument has been thoroughly considered by this Court, as well as the appellate court, and has resulted in rulings unfavorable to Defendant, the Court concludes it is not an extraordinary and compelling basis to support a sentence reduction under § 3582.

(ECF No. 151 at 4.) The Fourth Circuit Court of Appeals also affirmed the Court's ruling denying Defendant's motion for compassionate release. *United States v. Ruffin*, No. 22-7100, 2023 WL 3645519 (4th Cir. May 25, 2023). Defendant's current filings, which focus on Attorney Folmar's lack of an active bar license, do not present any facts or argument that cause the Court to reach a different conclusion. The Court again concludes Defendant is unable to establish an extraordinary and compelling reason for a reduction in sentence based on Attorney Folmar's involvement in Defendant's case.

In the supplement to his motion for compassionate release filed on July 11, 2025, Defendant also argues that exculpatory evidence was withheld by the prosecution. (ECF No. 191 at 1-2.) He again refers to Attorney Folmar's fraud and unauthorized practice of law but also contends that the Government withheld exculpatory evidence that would have discredited a witness. (*Id.* at 1.) These arguments about exculpatory evidence attack on the validity of Defendant's conviction and are not properly before the Court in a motion for compassionate release. *See United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022) (holding that § 3582 cannot be used to attack the validity of a sentence of conviction because such claims must be raised under 28 U.S.C. § 2255).

    3.    <u>Victim of Physical Abuse</u>

Defendant asserts he can show an extraordinary and compelling reason for a reduction in sentence because he was the victim of abuse and "survived 'serious bodily injury.'" (ECF

11

No. 179 at 1.) The sentencing policy guidelines provide that an extraordinary and compelling reason for a sentence reduction may exist if, while the defendant is in custody, he is the victim of "physical abuse resulting in 'serious bodily injury' as defined in the Commentary to § 1B1.1 (Application Instructions); that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant."[8] U.S.S.G. § 1B1.13(b)(4).

Defendant is unable to establish an extraordinary and compelling reason for a reduction based on his arguments that he is the victim of physical abuse. The records confirm that Defendant was involved in two physical altercations and suffered serious injuries as result. However, Defendant does not allege, and the records do not support, that either of the incidents were committed by, or at the direction of, prison personnel or any individual in charge of Defendant's custody.

Defendant specifically alleges that in the 2009 incident he was attacked by "half a dozen inmates." (ECF No. 179 at 2.) He does not allege that this assault was instigated by, or at the direction of, prison personnel. Rather, he contends that he had been asking to be returned to a federal facility because of the general aggressiveness of the population in the Alamance jail and because he is a "solitary individual." (*Id.* at 3.) This fails to demonstrate physical abuse by a correctional officer or BOP personnel as required under the guidelines.

---

[8] "Serious bodily injury" means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. In addition, "serious bodily injury" is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law. U.S.S.G. § 1B1.1, app. n.1(M).

12

In describing the 2013 assault, Defendant says that his cellmate at USP McCreary stomped on Defendant's face with steel-toe boots. (*Id.* at 5.) He says that he suffered broken bones in his face and was hospitalized in the intensive care unit. (*Id.* at 3, 5.) Defendant does not suggest prison personnel were involved in the assault but claims that he had asked to be reassigned to a different cell prior to the assault and his request was disregarded. (*Id.*) However, the fact that prison personnel did not respond to a request for a new cellmate does not demonstrate abuse "committed by or at the direction of, a correctional officer." U.S.S.G. § 1B1.13(b)(4). There is no allegation by Defendant that BOP personnel or anyone with custodial control had any knowledge or involvement in the attack.[9] Consequently, regardless of the quite serious nature of Defendant's injuries, Defendant is unable to show an extraordinary and compelling reason for a reduction in sentence on the basis he was the victim of abuse.

B.     18 U.S.C. § 3553(a) Factors

Defendant has failed to show an extraordinary and compelling reason warranting a sentence reduction, and therefore the Court is not required to further consider whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a reduction. However, the Court finds that even if an extraordinary and compelling reason existed, an analysis of the § 3553(a) factors would not support granting relief. Under § 3553(a) the goal is for a sentence "sufficient, but not greater than necessary" to satisfy the goals of sentencing. 18 U.S.C. §

---

[9] Nor is there is any indication or suggestion that prison or jail personnel intentionally or negligently ignored evidence of an impending assault. Notably, Defendant's civil action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, relating to the July 2013 incident failed in part on allegations because Defendant had not established that he alerted BOP to a "specific and immediate" threat." (ECF No. 179-1 at 7.)

3553(a). The Court weighs a number of factors to include: the nature of the offense; the defendant's personal history; the sentence relative to the nature and seriousness of his offense; the need for a sentence imposed to demonstrate just punishment for the crime; the need to protect the public and deter crime; the need to provide a defendant with effective rehabilitative circumstances; and the need to avoid sentencing disparity. *See id.* A court may consider post-sentencing facts in the record such as behavior while incarcerated and rehabilitation efforts. *United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019); U.S.S.G. § 1B1.13(d).

The Court recognizes that Defendant was only 25 years old when he committed the instant offenses and has been sentenced to decades in prison. However, there is little beyond his relatively young age at the time of the offense that weighs in his favor. A consideration of the § 3553(a) factors overall weighs against a reduction in sentence. First, Defendant's post-conviction behavior provides little evidence that Defendant has reformed during his many years in prison. Defendant has at least nine disciplinary infractions including citations for assaulting a cell mate, possessing a dangerous weapon, stalking corrections officers, refusing to obey an order, and a 2022 infraction for fighting. (ECF No. 151 at 6; ECF No. 173 at 3.) These infractions demonstrate Defendant continues to have problems conforming his behavior to community expectations and rules. Moreover, the record does not include any persuasive evidence that Defendant is making significant efforts to rehabilitate. Defendant says he has taken some BOP programming but concedes "I know I have not maximized my programming time and credentials." (*Id.*)

Moreover, the nature of the offense was serious. Defendant was on pre-sentencing release from a conviction in the Eastern District of North Carolina when he robbed a bank,

threatening the victims with a firearm. (ECF No. 106, ¶ 4-7.) And Defendant has a concerning criminal history. Despite his age at the time of the offense Defendant had numerous prior convictions including convictions for violating multiple domestic protections orders, assault (biting a person on the neck), and using and carrying a firearm in relation to a drug trafficking crime. (ECF No. 106, ¶¶ 25-30.)

Consequently, the Court finds that a consideration of the § 3553(a) factors does not support a reduction in sentence. The Court concludes that Defendant's sentence is "sufficient, but not greater than necessary." Any lesser sentence would not protect the public, deter crime, or provide adequate time for rehabilitation. *See* 18 U.S.C. § 3553(a)(2).

## V. Motions to Amend

On July 11, 2025, Defendant filed a motion entitled "Motion to Amend Compassionate Release Motion Request for Extension to Obtain Medical Records; Motion to Deter Summary Dismissal; Motion for Appointment of Counsel; and Prayer for Judicial Equity." (ECF No. 192.) In the filing, Defendant asks the Court to allow him to amend his compassionate release motion to incorporate additional facts about the physical assaults he suffered and have additional time to obtain and file medical records documenting his injuries after the attacks. (*Id.* at 1.) He also asks for the appointment of counsel "for the sole purpose of obtaining and submitting the relevant medial documentation required to fully adjudicate his compassionate release request." (*Id.* at 1-2.) He asks the Court not to dismiss the action "without affording him a full and fair opportunity to present the entirety of the circumstances including the physical assaults, the psychological toll, his record of personal reform . . . ." (ECF No. 192 at 2.)

Subsequently, on July 28, 2025, Defendant filed a Motion to Amend his Compassionate Release Motion to Reduce Sentence asking the Court to allow him to file his medical records from UNC Chapel Hill Hospital. (ECF No. 193 at 1.) Defendant asserts that the records document the extent of his injuries following his attack at Alamance County Detention Center in 2009. (*Id.* at 1-2.) Defendant contemporaneously filed the medical records. (ECF No. 194.) Within the motion he also asks for counsel to be appointed for the limited purpose of obtaining medical records. (ECF No. 193 at 2.)

Insofar as the most recent Motion to Amend, (ECF No. 192), asks the Court to allow Defendant to amend his motion for compassionate release to include his UNC hospital medical records, the motion will be granted. The Court has considered the UNC hospital medical records in evaluating his motion for compassionate release. However, insofar as Defendant's motions to amend, (ECF Nos. 192, 193), ask the Court to extend the time to obtain and file additional medical documents or information in support of his motion for compassionate release, the motions will be denied. The record before the Court contains ample evidence about the serious nature of Defendant's injuries. However, ass discussed above, because the assaults did not involve prison personnel, Defendant cannot establish an extraordinary and compelling reason for a reduction in sentence on this basis. Consequently, additional medical records or information about the extent of his injuries would not impact his request for compassionate release, and the Court finds no reason to grant an extension of time.

Defendant also moves for the appointment of counsel. (*See* ECF No. 192 at 1-2; ECF No. 193 at 3.) The right to counsel does not extend beyond the first appeal of right. *See United*

*States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000). A motion under § 3582(c)(1)(A) is not an opportunity to relitigate sentencing issues and does not require appointment of counsel or a hearing on the claims. *Id.* Defendant has failed to show a particular need that supports appointing counsel in this matter. Defendant asserts that he needs counsel for the limited purpose of obtaining the UNC Health and Kentucky Hospital records. (ECF No. 192 at 2; ECF No. 193 at 2.) Defendant has obtained and submitted the UNC Health Hospital records and the records before the Court also include BOP medical records showing Defendant's condition after the 2013 incident. (ECF No. 194 at 18-32.) As discussed above, additional records about the extent of Defendant's injuries will not aid Defendant's request for compassionate release. Accordingly, there is no need for counsel as sought by Defendant and his request for counsel will be denied.

## VI. Motion to Seal

Lastly, the Court considers Defendant's Motion to Seal, (ECF No. 180), in which he requests "that this case be filed as a [sealed] document because the findings in this Court may have a binding effect on indicted and unindicted individuals enclosed in the substance of my pleading and attachments." (ECF No. 180 at 1.)

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). "The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Id.* (citation omitted). "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that

'countervailing interests heavily outweigh the public interests in access.'" *Doe*, 749 F.3d at 265–66 (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).). The First Amendment presumptive right of access, in contrast, extends "only to particular judicial records and documents." *Id.* at 266 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). However, it may only be restricted upon a showing that such a restriction is "necessitated by a compelling government interest and ... narrowly tailored to serve that interest." *Id.* (citation and internal quotation marks omitted).

Defendant's motion asking the Court to seal the case will be denied. In support of his request Defendant makes a broad allegation that the case "may have a binding effect on indicted and unindicted individuals enclosed in the substance of my pleading and attachments." (ECF No. 180 at 1.) Defendant has not provided any details to explain what people or material he hopes to protect and why it is necessary to do so. Moreover, many of the arguments and facts presented in the current motions have been part of previous court filings and therefore are already publicly available. Consequently, Defendant has not shown that limiting access to documents or filings in this case is supported by a compelling interest or a right that heavily outweighs the presumptive right to access. The Motion to Seal will be denied.

Accordingly, for the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion for Relief from Judgment Pursuant to Rule 60(B)(2), (ECF No. 173), Compassionate Release Motion to Reduce Sentence, (ECF No. 179), Motion to Seal, (ECF No. 180), and "Motion to Amend

Compassionate Release, Request for Extension to Obtain Medical Records, Motion to Deter Summary Dismissal, Motion for Appointment of Counsel and Prayer for Judicial Equity," (ECF No. 192), are **DENIED**.

Defendant's Motion to Amend, (ECF No. 193), is **GRANTED in part and DENIED in part.** The motion is **GRANTED** to allow Defendant to include the medical records filed in, ECF No.194, but **DENIED** in all other respects.

This, the 22nd day of August 2025.

/s/ Loretta C. Biggs
Senior United States District Judge